2013 BNH 015

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:

                                                  Bk. No. 12-11666-BAH
                                                  Chapter 11

William Cahill &
Wendy Cahill,

        Debtors

*Carl D. Hanson*
*Hanson and Nolan LLP*
*New London, NH*
*Attorney for the Debtors*

*Timothy E. Britain*
*Cleveland, Waters & Bass, P.A.*
*Concord, NH*
*Attorney for Old Republic National*
*Title Insurance Company*

### Memorandum Opinion

**I.    PREFACE**

Before the Court is William and Wendy Cahill's (the "Debtors") motion under 11 U.S.C. § 506(a)[1] to determine the secured status of Old Republic National Title Insurance Company's ("Old Republic") second mortgage on their principal residence (the "Motion"). The Debtors assert Old Republic's mortgage is "out of the money" and that its claim is modifiable via their proposed chapter 11 plan. Old Republic admits that its second mortgage claim may have been wholly unsecured when the Debtors filed their bankruptcy petition, but now asserts that due to the recovery of the residential real estate market, its second mortgage claim is at least partially secured. In the context of a primary-residence mortgage, this dispute is significant; if Old

---

[1] Hereinafter, unless otherwise stated, "§," "section," "Code," or "Bankruptcy Code" shall refer either in general or to a specific provision of title 11 of the United States Code.

Republic's claim is secured by even a dollar of value, Old Republic's claim must be paid in full. Thus, the heart of the dispute between the parties is as of what date should the Court determine the value of the property. The Debtors argue for the petition date and Old Republic for a date near confirmation of the Debtors' plan. After reflecting on the arguments of the parties, the relevant statutory and case law, and the practical realities of this case, the Court determines that a date near the confirmation hearing is the appropriate time to determine the value of the property.

## II. FACTUAL BASE

The following facts are straightforward and undisputed. This bankruptcy case was initially filed under chapter 13 on May 22, 2012 (the "Petition Date"). The Debtors converted the case to chapter 11 several months later, after the chapter 13 trustee moved to dismiss based on the Debtors having exceeded the debt limit permissible in a chapter 13 case. After conversion, the Debtors took several more months to file a disclosure statement and plan of reorganization. The United States Trustee and a creditor, Bayview Loan Servicing LLC ("Bayview"), objected to the disclosure statement. After multiple rounds of amendments, on April 24, 2013, the Debtors filed the plan and disclosure statement here at issue (respectively the "Plan" and "Disclosure Statement").

The centerpiece of the Plan is the Debtors' primary residence located at 62 Armington Loop, Piermont, New Hampshire (the "Property"). According to the memoranda filed in conjunction with the Motion, the Debtors obtained an appraisal of the Property shortly before the Petition Date.[2] This appraisal valued the Property at $255,000. Germane to this dispute, the

---

[2] The Disclosure Statement refers to the Debtors' "August 2012 appraisal." See Doc. No. 75 at 4. Both the Debtors and Old Republic, in their respective legal memoranda, refer to the Debtors' appraisal having been obtained pre-petition (specifically on May 8, 2012). For the purpose of deciding the Motion, the Court will disregard the appraisal date supplied in the Disclosure Statement because the parties now, apparently, agree that the Debtors obtained their appraisal pre-petition.

2

Disclosure Statement lists a first and second mortgage on the Property: the first mortgage held by Bayview, with a Petition Date balance of $406,876.45; and the second mortgage held by Old Republic, which, on the Petition Date, had a balance of $391,633.55. The Plan, applying the $255,000 valuation, treats the second mortgage claim as wholly unsecured and classifies it along with the general unsecured claims for payment and voting purposes. The Debtors filed the Motion to confirm the wholly unsecured status of Old Republic's second mortgage claim.

Old Republic has objected to this attempt to strip-off its second mortgage, arguing that the Debtors' pre-petition appraisal is insufficient evidence to demonstrate that the Property is worth less than the first mortgage. To back up this claim, Old Republic points to an appraisal which it obtained on October 3, 2012, valuing the property at $375,000. Old Republic does not argue that this is the current value of the Property; only that it is evidence of the Property's significant appreciation in value in the time since the Debtors obtained their pre-petition appraisal. Old Republic argues that the Property is likely worth even more now than the amount from its October 2012 appraisal. It would have the Court deny or at least refrain from ruling on the Motion until the Debtors have updated their evidence of the Property's value.

The Debtors counter Old Republic's assertions by pointing to case law that supports setting property value as of the petition date for purposes of determining whether a claim is secured. On the other hand, Old Republic has cited cases that support using the plan confirmation date, as opposed to the petition date, as the time for determining the secured status of a claim. Further, Old Republic argues that the Court must consider only the original principal amounts of the first and second mortgage for the purpose of determining whether the second mortgage is secured. After a hearing, the Court took the Motion under advisement.

**III.   ANALYSIS**

There are two issues before the Court.  First, when during a bankruptcy case should the value of a residential property be fixed in order to determine if a second mortgage is wholly unsecured. And, second, when determining whether a mortgage is secured under 11 U.S.C. § 506(a), whether a court looks to the original principal amount of the loan or the amount of the claim filed pursuant to 11 U.S.C. § 502.  The answer to the first question is not clear cut, while the answer to the second is an issue of black-letter law.

    A.    <u>The Proper Time for Determining the Secured Status of a Claim</u>

A trustee or debtor-in-possession may modify the terms of many kinds of secured claims in a chapter 11 bankruptcy case.  There are, however, exceptions to this rule when the debtor is an individual.  Claims secured by an individual debtor's principal residence are such an exception.  Section 1123(b)(5) provides that a chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  Construing an identical Code section in chapter 13,[3] the Supreme Court held that a chapter 13 plan proposing to modify a claim partially secured by a debtor's principal residence was not confirmable.  <u>Nobleman v. Am. Sav. Bank</u>, 508 U.S. 324 (1993).  That plan proposed to bifurcate the claim and pay the unsecured portion on a pro rata basis with other unsecured claims.  The Court held that this bifurcation amounted to "a modification of the rights of the holder of the security interest" and that "section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the

---

[3]   This section is 11 U.S.C. § 1322(b)(2), which states that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

4

debtor's principal residence." Nobleman at 332. Section 1123(b)(5) codifies the Nobleman decision in individual debtor chapter 11 cases. See Collier on Bankruptcy ¶ 1123.02[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Here, if Old Republic's claim is secured by any amount of value, the Debtors' plan may not modify the claim; such a modification would run squarely into the Nobleman prohibition. Old Republic believes its claim to be at least partially secured and so opposes the Plan. The Court, therefore, must determine whether Old Republic's claim is secured by any amount of value.

Section 506(a)(1) of the Bankruptcy Code sets out the procedure for determining whether a claim is secured:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The central issue in this case is as of what date the Court ought to fix the Property's value. Section 506(a) does not direct a court to make the value determination at a fixed or predetermined time. SW Boston Hotel Venture, LLC v. City of Boston (In re SW Boston Hotel Venture, LLC), 479 B.R. 210, 221 (B.A.P. 1st Cir. 2012). Rather, it leaves a court with discretion to value the property looking to the "purpose of the valuation," and how the property is to be used. These determinations are to be made "in conjunction with" any hearing relating to

5

the use of the property or a plan that will affect a "creditor's interest" in the property. § 506(a)(1).

This open-ended language has hatched a "plethora of case law on the issue" generating "a wide variety of divergent decisions." In re Hales, 493 B.R. 861, 864 (Bankr. D. Utah 2013). Broadly, these decisions fall into two categories. Some courts set bright line rules for valuations in specific circumstances. See, e.g., In re Beard, 108 B.R. 322 (Bankr. N.D. Ala. 1989) ("[C]laims are allowed as of the commencement of a bankruptcy case and, therefore . . . the secured status or portion of the claim also must be determined as of that time."). Other courts support a flexible approach. See, e.g., SW Boston Hotel, 479 B.R. at 222 ("[V]aluation of the collateral and the creditor's claim should be flexible and not limited to a single point in time, such as the petition date or confirmation date.") (quoting Fin. Sec. Assur. Inc. v. T-H New Orleans Ltd. P'ship. (In re T-H New Orleans Ltd. P'ship), 116 F.3d 790, 798 (5th Cir. 1997).

These various decisions, regardless of whether they take the bright line or flexible approach, have chosen a number of different points in time to determine the secured status of a claim: (1) plan confirmation date, (2) plan effective date, (3) date of valuation hearing, and (4) petition date. See In re Wood, 190 B.R. 788, 790 (Bankr. M.D. Pa. 1996) (collecting cases taking various positions); 134 A.L.R. Fed. 439, "Time and Method of Valuation under 11 U.S.C.A. § 506," Part III "Particular Views as to Relevant Time for Valuation." The choice can depend on the purpose of the valuation, e.g., the treatment of a claim in a chapter 11 plan, whether a creditor is entitled to post-petition interest under section 506(b), and—the purpose at hand—whether a secured claim may be modified in a chapter 11 plan.

6

In this instance, the Court determines that the flexible approach is best, and that after applying the flexible approach to the facts of this case, a valuation date near confirmation should be used to value the Property. Taking the flexible approach is consistent with the final sentence of section 506(a). SW Boston Hotel, 479 B.R. at 222 (citing In re Urban Commc'ns PCS Ltd. P'ship, 279 B.R. 232 (Bankr. S.D.N.Y. 2007)); Hales, 493 B.R. at 866; In re Dheming, 2013 WL 1195652 (Bankr. N.D. Cal. Mar. 22, 2013). Here the purpose of the valuation is to determine whether Old Republic's claim is wholly unsecured. The Court will make this determination "in conjunction with" the plan which affects Old Republic's rights. § 506(a)(1).

This approach is fair for a number of reasons. First, Old Republic has argued that the value of the Property may have increased since the Petition Date. The Debtors have not disputed this possibility. No one has argued that the value of the Property declined since the case was filed. Given these assertions, valuing the Property near the confirmation hearing will provide the most accurate result as to whether Old Republic's claim is wholly unsecured. See SW Boston Hotel at 222 (using the post-petition sale price of the collateral to determine whether a secured creditor was entitled to post-petition interest, in part because this was the most accurate valuation). In this case, if the Court did not adopt the flexible approach and used the petition date, the Court might end up confirming a plan that treated Old Republic's mortgage as wholly unsecured, when in fact it was not. This approach also gives Old Republic, which bears the risk of having extended credit to the Debtors, the benefit of an increase in value of the Property, consistent with the "equitable concept that those who bear the risk should benefit from the rise in value." In re Wood, 190 B.R. at 794.

The reasoning of courts that use the petition date as a bright line valuation date does not stand up to close scrutiny. Courts holding that the petition date is the appropriate time for

7

valuation look to the claims allowance process.  The court in In re Beard, 108 B.R. at 326, reasoned that the "main thrust of section 506(a)" is the "allowance of secured claims" and that "section 502(b) stands for the proposition that claims are allowed as of the commencement of a bankruptcy case and, therefore, that the secured status or portion of the claim also must be determined as of that time."  Other courts apply this same reasoning.  See  In re Flagler-At-First Assoc., Ltd., 101 B.R. 372 (Bankr. S.D. Fla. 1989) ("Thus, when Section 506 refers to 'allowed claims' being 'secured claims' it is intended to be consistent with Section 502(b). Stated more simply, an allowed secured claim is determined 'as of the filing of the petition,' just like any other claim.").  The court in In re Allen asserted that:

> Valuing the collateral as of the filing date seems most appropriate because the filing date is the one which alters the rights otherwise possessed by the secured creditor under its documentation and state law to repossess the collateral, liquidate it and apply the sale proceeds to the debt. It also establishes consistency between valuation of wholly unsecured claims, which of course are established as of the filing date, and the unsecured portion of partially secured claims.

In re Allen, 240 B.R. 231, 237 (Bankr. W.D. Va. 1999).

These cases, however, do not sufficiently take into account the final sentence of section 506(a).  "Using § 502 as a justification for valuing all secured claims as of the petition date would render the last sentence of § 506(a)(1) superfluous."  In re Dheming, 2013 WL 1195652 at * 2.  Additionally, the section 502 justification conflates the amount of the claim and the value of the collateral securing the claim; the first is fixed as of the petition date, whereas the second can vary over the life of the case.  In a chapter 11 case, a pure petition-date approach is untenable given the requirement of section 1129(a)(7)(A) that the holder of secured claim either accept the plan or receive "property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."  If the Court used the petition date to value the Property in this case,

8

ignoring the possibility that Old Republic was partially secured, then the Court would run the risk of arriving at the confirmation hearing and having to still conduct a valuation hearing as to whether the treatment of Old Republic's claim met the liquidation test.

The cases the Debtors cite in support of using the petition date are distinguishable. First, the Debtors cite TD Bank, N.A. v. Landry, 479 B.R. 1 (D. Mass. 2012), a case which is nonetheless factually similar to this case. It deals with an individual debtor in a chapter 13 case attempting to strip-off a wholly unsecured second mortgage on his residential property. The Landry court determined that the petition date was the appropriate date to determine whether the mortgage was wholly unsecured. Landry partly relies on the section 502 argument discussed above. Id. at 7. Additionally, Landry reasons that "determining the parties' rights early will discourage them from improperly delaying or accelerating the proceeding" to take advantage of the appreciating or depreciating value of collateral. Id. This argument has some merit, but the Court finds the equitable principle discussed above to be more persuasive: that the secured creditor should receive the benefit of an increase in the collateral value. The Court also believes that any improper delaying tactics of the parties can be detected and dealt with through proper judicial case management.

Finally, in Landry the court asserts that "a majority of courts . . . have determined that the petition date is the appropriate date for determining whether the anti-modification provision of § 1322(b)(2) applies to a claim." Id. But in discussing that assertion, the court cites to a number of cases that deal with different issues than whether a residential mortgage claim is wholly unsecured. Id. (citing In re Benafel, 461 B.R. 581, (B.A.P. 9th Cir. 2011) (holding that the determination of whether the debtor is using real property as his principal residence is made as of the petition date for the purposes of section 1322(b)(2)); In re Abdelgadir, 455 B.R. 896, (B.A.P.

9

9th Cir. 2011) (same but construing section 1123(b)(5)); In re Leigh, 307 B.R. 324, 331-32 (Bankr. D. Mass. 2004) (whether claim is secured by collateral in addition to debtor's principal residence is determined as of the petition date).  The Court sees no reason why the value of the collateral need be established at the same time as the determination of whether the property is the debtor's primary residence or whether the claim is secured by additional collateral.  Landry does not address that point.

The Debtors also cite to In re Wood for the proposition that the proper time for the valuation is the petition date.  In Wood, 190 B.R. at 794, the court endorsed a flexible standard for determining the appropriate time to make the determination under section 506(a), based on a number of different factors.  Ultimately, the Wood court concluded that based on the unique facts before it, the petition date was the suitable date.  These unique facts involved the debtor having gone through considerable effort to re-zone the property.  The court felt that it would be inequitable for the secured creditor to reap the benefits of the increase in value, since the debtor's own effort had driven up the price.  Id. at 795.  Other courts have distinguished Wood based on the peculiar facts of that case.  See, e.g., Hales, 493 B.R. at 865.  The Court finds these cases persuasive.  The Debtors have not argued that the situation here is similar to that in Wood.

For these reasons the Court holds that the Property will be valued at a date close to the confirmation hearing of the case.  Because the Court is sensitive to the fact that the Plan may need to be reformulated if Old Republic's claim turns out to be secured, the valuation hearing will not take place at the same time as the confirmation hearing.

    B.    <u>Under Section 506(a) a Mortgagee's Claim is not Limited to the Principal Amount its Loan</u>

Old Republic argues that in making the determination under section 506(a), the Court must compare (1) the principal amount of the first mortgage loan, (2) the principal amount of the

10

second mortgage loan, and (3) the value of the Property.  Under this analysis, if the value of (1) is less than the value of (3), Old Republic's claim would be partially secured and not modifiable.  In essence, Old Republic argues that the first mortgagee's secured claim is limited to its principal amount.  Under the Bankruptcy Code a claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).  Whether a creditor has a right to payment is a property right, which is a matter of state law.  Butner v. United States, 440 U.S. 48 (1979).  Accordingly, the amount of a claim is determined under state law, absent a controlling federal statute.  Id. at 55.  The amount of a claim is also fixed as of the petition date.  11 U.S.C. § 502(b) ("[t]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition.").  Section 506(a) does not alter this scheme and does not limit the amount of a secured claim to the principal amount of a loan.  Under section 506(a) a secured claim is secured "to the extent of the value of such creditor's interest in the estate's interest in such property."

The only legal authority Old Republic relies on to support its argument is In re Sarno, 463 B.R. 163 (Bankr. D. Mass. 2011).  This case does not stand for the broad proposition that a mortgagee's secured claim is limited to the value of the principal amount of its loan to the debtor.  In Sarno, the court used the principal balance to assess the mortgagee's claim because there was no evidence of a pre-petition arrearage claim and no evidence of legal fees and accrued interest that would normally go hand-in-hand with such an arrearage.  Id. at 165-66.  In this case, the Debtors owe amounts over and above the principal amount of the loan to the first mortgagee.  Accordingly, Sarno is distinguishable.  Old Republic has not persuaded the Court that the secured claim of the first mortgagee should be limited to its principal balance.

11

IV. CONCLUSION

For the foregoing reasons, the Court shall determine the status of Old Republic's secured claim at a hearing to be held near the date of plan confirmation in this case. In making this determination the Court will not limit Bayview's secured first mortgage claim to the value of the principal balance of its loan. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. The Court shall issue a separate order reflecting the conclusions reached in this opinion.

ENTERED at Manchester, New Hampshire.


Date:   December 2, 2013           /s/ Bruce A. Harwood
                                   Bruce A. Harwood
                                   Chief Bankruptcy Judge